[Sac. No. 2880. In Bank.—December 3, 1920.]

HERBERT HAIGHT, Respondent, v. MARION C. COS-TANICH, Appellant.

[1] WATERS AND WATER RIGHTS—RIPARIAN OWNERSHIP—PARAMOUNT RIGHTS UNDER PRIOR DIVERSION.—The rights of a land owner to the waters to which his land is riparian are subject to those rights to divert and use the waters which have vested and accrued, as the result of diversion prior to the vesting of his rights as a riparian owner under government patent, and to such rights as have been subsequently acquired by purchase and grant, or by prescription.

[2] ID.—PATENT—TIME OF VESTING OF RIPARIAN RIGHTS.—The granting of a patent to a settler on public lands relates back to the filing of the entry of the land in the United States land office, and confers the rights of a riparian owner from the date of entry.

[3] ID.—PARAMOUNT RIGHTS UNDER LOCAL LAWS.—The rights of a riparian owner under government patent are subject to water rights which, under the California law of possessory rights, have vested prior to entry, since the federal statutes provide for the protection of those rights to waters upon the public domain, acquired by diversion, which are recognized and acknowledged by the local customs, laws, and decisions of the courts of the localities where such rights are claimed.

[4] ID.—APPROPRIATION — ACTUAL DIVERSION AND USE SUFFICIENT.—Compliance with the provisions of section 1410 et seq. of the Civil Code by posting notices is not essential to the acquisition of rights by appropriation, since actual diversion and use was sufficient.

[5] ID.—QUANTITY OF WATER — DETERMINATION OF AMOUNT.—The quantity of water to which an appropriator becomes entitled under a diversion made under the law of possessory rights is not determined by the capacity of the diverting ditch, but is limited to the amount applied to a beneficial use, which is the amount actually used and reasonably necessary for the useful purpose to which the water has been applied.

[6] ID.—RIGHT TO ADDITIONAL WATER.—The quantity of water to which an appropriator may become entitled under such a diversion is not necessarily limited to the amount actually used at the time of the original diversion, but an additional amount reason-

1. Nature of riparian rights and lands to which they attach, notes, 9 Ann. Cas. 1235; Ann. Cas. 1913E, 709; Ann. Cas. 1915C, 1026,

ably necessary to meet increasing needs may be taken, provided the new use be within the scope of the original intent and that it be taken and put to such use within a reasonable time by the use of reasonable diligence.

[7] ID.—DIVERSION UNDER FEDERAL LICENSE — RIGHT TO ADDITIONAL WATER—TIME OF EXERCISE.—Water rights acquired outright under license from the federal government and not by mere occupancy embrace the conditional right to take an additional amount of water to meet future needs within the scope of the original intent, within a reasonable time, and such time is not limited to the period of five years from the date of the original diversion provided by section 1411 of the Civil Code, but to a reasonable time under all the circumstances of the case.

[8] ID.—MEASURE OF RIGHTS OF DIVERSIONER.—The quantity of water to which one is entitled by right of diversion is the quantity actually used for beneficial purposes at the time of the original diversion, and which is reasonably necessary for such purposes, plus any additional quantity intended to be applied to future needs at the time of the original diversion, which has been actually put to use within a reasonable time, measured by all the circumstances of the case, after the original diversion, and which is reasonably necessary therefor.

[9] ID.—RIGHTS OF INTERVENING APPROPRIATOR.—The rule whereby the right of an appropriator to take at a later date water in excess of that which he diverted and put to beneficial use in the first instance may relate back to the inception of his work, although he has not complied with the code requirements, does not hold as against an intervening appropriator who has complied therewith, in view of section 1419 of the Civil Code.

[10] ID.—PRESCRIPTIVE RIGHTS—LIMITATION OF AMOUNT.—A water right acquired by prescription is limited to the amount of water reasonably necessary for the beneficial purpose for which it is diverted, and no title by prescription can be acquired to that part of a diversion which is excessive of such needs.

[11] ID.—ACTION INVOLVING WATER RIGHTS—CAPACITY OF DIVERTING DITCH AS MEASURE OF RIGHTS — ERRONEOUS JUDGMENT.—In an action involving water rights, where it appeared that plaintiff constructed a ditch over the land of the defendant prior to defendant's entry thereon as government land, and diverted water through such ditch from a creek to which the land of defendant was riparian, a judgment based on the assumption that the capacity of the ditch at the time of original diversion and prior to defendant's entry was the measure of plaintiff's rights, irrespective of beneficial use, was erroneous.

[12] ID.—USE OF ADDITIONAL WATER—BURDEN OF PROOF.—Where it was shown in such an action that at the time the defendant be-

came possessed of riparian rights under his government patent, plaintiff was using only enough water for stock, domestic purposes, and irrigation of six acres of land, if plaintiff had at the time of his original diversion planned to take additional water to irrigate newly cultivated land, but had not completed his preparations at the time of defendant's entry on the government land, but continued thereafter with due diligence to make preparation and use the additional water, the burden was upon plaintiff to prove such facts.

[13] ID.—ADVERSE USER—BURDEN OF PROOF.—In such an action, if plaintiff acquired a right to more water after defendant's entry by adverse use for a period of five years, the burden was upon plaintiff to show that fact.

[14] ID.—NUMBER OF ACRES ENTITLED TO IRRIGATION — EVIDENCE.— Where it was shown in such an action that only fifteen acres of plaintiff's twenty-two acre tract were under irrigation continuously for five years before the commencement of the action, and that the right to take water for the irrigation of the additional seven acres could not relate back to the original diversion because there was no reasonable diligence in their preparation, evidence as to the amount of water needed for the irrigation of the whole twenty-two acres was incompetent and irrelevant.

[15] ID.—DETERMINATION OF QUANTITY OF WATER — AMOUNT BENEFICIALLY USED.—The mere fact that a ditch was full or carried a certain quantity of water throughout the season is of no consequence unless all of the water so carried was put to a beneficial use all of the time.

APPEAL from a judgment of the Superior Court of Shasta County.   James G. Estoy, Judge.   Reversed.

The facts are stated in the opinion of the court.

Carr & Kennedy and Chenoweth & Leininger for Appellant.

Christian F. Kimball, Charles H. Braynard, and Braynard & Kimball for Respondent.

LENNON, J.—Plaintiff and defendant, who are the owners of adjoining tracts of land in Shasta County, seek in this action an adjudication of their respective rights in and to the waters of a creek, known as the North Fork of Richardson Creek, to which defendant's land is riparian.   In 1885, plaintiff's predecessor in interest made entry of plaintiff's land, which was then part of the public lands of the United

States, in the United States land office, obtaining a patent in 1895. Prior to making entry of his land, the predecessor of plaintiff constructed a ditch which had at that time, and still has, a carrying capacity of forty-eight miner's inches, by which he diverted water from the North Fork of Richardson Creek across the land of defendant, which at that time was part of the public domain, to plaintiff's land, where it was used for irrigation, stock, and domestic purposes. At the time defendant made entry of his land, which was in 1886, the ditch above mentioned had been constructed and plaintiff's predecessor had about six acres of his land cleared, cultivated, and under irrigation from said ditch. Just when additional acres of plaintiff's land were cultivated does not clearly appear from the testimony, but, some time between the years 1886 and 1910, the acreage under irrigation was increased to at least fifteen. In 1892, defendant constructed a ditch with a capacity of seventy-five miner's inches, the intake of which was higher up the creek than that of plaintiff. The evidence does not show that either party objected, prior to 1916, to the amount of water diverted by the other; some witnesses testified that there was at all times sufficient water in the creek for the uses of both. From 1892 both plaintiff and defendant diverted water through their respective ditches and used it for irrigation and stock purposes until the year 1916, when defendant dammed up the creek so as to prevent all water from flowing into plaintiff's ditch.

Plaintiff in his complaint asked for an injunction restraining defendant from interfering with his use of the water and for a judgment for damages alleged to have resulted to his crops from defendant's interference with the flow of water in his ditch. The trial court decreed that plaintiff was entitled to forty-eight miner's inches of the first flow of the waters of the North Fork of Richardson Creek; that, subject to said right of plaintiff, defendant was entitled to the remainder thereof, amounting to fifty-two miner's inches, and gave judgment for damages against defendant for the sum of $613.30. Upon his appeal from the judgment, defendant does not question the right of plaintiff to divert water across defendant's land by means of his ditch; the amount of water which plaintiff is entitled to divert is the point of controversy.

[1] Defendant's claims are based upon his ownership of riparian lands. The rights of defendant to the waters to which his land is riparian are subject to those rights to divert and use the waters which had vested and accrued, as the result of diversion, prior to the vesting of defendant's rights as a riparian owner under his grant from the United States government. (*Osgood* v. *El Dorado Water etc. Co.,* 56 Cal. 571; *Himes* v. *Johnson,* 61 Cal. 259; *De Necochea* v. *Curtis,* 80 Cal. 397, [20 Pac. 563, 22 Pac. 198]; *Duckworth* v. *Watsonville Water etc. Co.,* 170 Cal. 425, 432, [150 Pac. 58].) His rights are also subject to such rights to the waters as have been acquired subsequent to his entry, by purchase and grant or by prescription, "that is, by adverse use for the period of five years without interruption by the real owner." (*Palmer* v. *Railroad Com.,* 167 Cal. 163, 172, [138 Pac. 997]; *Smith* v. *Hawkins,* 110 Cal. 122, 125, [42 Pac. 453]; *Duckworth* v. *Watsonville Water etc. Co.,* 150 Cal. 520, 530, [89 Pac. 338].) The first question to be determined is the extent of plaintiff's rights acquired by diversion prior to the vesting of defendant's rights as a riparian owner.

[2] The granting of a patent to a settler on public lands is held to relate back to the filing of the entry of the land in the United States land office and to confer the rights of a riparian owner upon the grantee of the patent from the date of his entry. (*Sturr* v. *Beck,* 133 U. S. 541, [33 L. Ed. 761, 10 Sup. Ct. Rep. 350, see, also, Rose's U. S. Notes]; *McGuire* v. *Brown,* 106 Cal. 660, [30 L. R. A. 384, 39 Pac. 1060].) Therefore, upon the granting to defendant of a patent to his land in 1893, his rights as a riparian owner vested as of the date of his entry, namely, 1886. [3] Defendant's rights under his patent are subject to water rights which, under the California law of possessory rights, had vested prior to defendant's entry, for the federal statutes provide for the protection of those rights to waters upon the public domain, acquired by diversion, which are recognized and acknowledged by the local customs, laws, and decisions of the courts of the localities where such rights are claimed. (U. S. Rev. Stats., secs. 2339, 2340; U. S. Comp. Stats., secs. 4647, 4678; 9 Fed. Stats. Ann., 2d ed., pp. 1349, 1360; *Jennison* v. *Kirk,* 98 U. S. 453, [25 L. Ed. 240]; *Telluride Power Co.* v. *Rio Grande etc. Ry.,* 175 U. S. 639, [44 L. Ed. 308, 20 Sup. Ct. Rep. 245, see,

also, Rose's U. S. Notes].) **[4]** Plaintiff's appropriation was not made by posting notice as required by the provisions of the Civil Code (Civ. Code, sec. 1410 et seq.), but compliance with these provisions is not essential to the acquisition of rights by appropriation; actual diversion and use of the water is recognized as a valid appropriation in this state (*De Necochea* v. *Curtis, supra; Duckworth.* v. *Watsonville Water etc. Co.,* 158 Cal. 206, 211, [110 Pac. 927].)

**[5]** The quantity of water to which a person becomes entitled by such diversion is not determined by the capacity of the ditch diverting the water; the extent of the right gained by the diversion is limited to the amount of water applied to a beneficial use, which has been interpreted to mean the amount actually used and reasonably necessary for a useful purpose to which the water has been applied. (*McKinney* v. *Smith,* 21 Cal. 374; *Smith* v. *Hawkins,* 120 Cal. 86, [52 Pac. 139]; *Leavitt* v. *Lassen Irr. Co.,* 157 Cal. 82, [29 L. R. A. (N. S.) 213, 106 Pac. 404]; *California Pastoral etc. Co.* v. *Madera etc. Irr. Co.,* 167 Cal. 78, [138 Pac. 718].) **[6]** However, the quantity of water to which a person may become entitled by diversion is not necessarily limited to the amount of water actually used at the time of the original diversion. Inasmuch as plaintiff's diversion was not made under the modes prescribed by the California statutes, it is governed solely by the California law of possessory rights as it existed prior to the adoption of such statutory methods. The cases involving water rights acquired under this law "lay down the rule that a right to the use of running water does not vest in possession at common law, until there has been an actual diversion and beneficial use of the water. But they all recognize, and some of them declare, that, before any actual diversion or use of the water, a claimant may acquire an incipient, incomplete, and conditional right to the future use of the water, by beginning the construction of the works necessary for such diversion and use, and, in good faith, diligently prosecuting the same toward completion. . . . There is no case, arising prior to the enactment of the code, which holds that the party who thus in good faith began and diligently prosecuted the work on a dam and ditch for the diversion and use of water, could not protect his incipient right to

the water against the hostile diversions and claims of others by an appropriate suit for that purpose. It is obvious that this could not be so. Such visible act and avowed intent gave him a conditional right to the future use of the water, prior to its actual use, the condition being that he should thereafter diligently continue the work to completion and then divert the water and apply it to a useful purpose, failing which his right would cease. Upon the performance of these conditions his title to such use would become complete and perfect. In the meantime, however, he had an existing conditional right, manifested by actual visible possession of the works.'' (*Inyo Cons. Water Co.* v. *Jess,* 161 Cal. 516, 519, [119 Pac. 934, 936].) This right to take an additional amount of water reasonably necessary to meet increasing needs is not unrestricted; the new use must have been within the scope of the original intent, and additional water must be taken and put to a beneficial use in keeping with the original intent, ''within a reasonable time by the use of reasonable diligence,'' or the right to the additional water is subject to intervening claims. (*Senior* v. *Anderson,* 115 Cal. 496, 504, [47 Pac. 454, 456]; *Inyo Cons. Water Co.* v. *Jess, supra.*)

[7] Defendant contends that the period of time within which the right to use an increased amount of water, to meet accruing needs, must be exercised is limited to a period of five years from the date of the original diversion, basing the contention upon the fact that, by virtue of section 1411 of the Civil Code, as interpreted in the California cases, a right acquired by appropriation ceases upon a failure to make a beneficial use of the appropriation for a period of five years. (*Smith* v. *Hawkins,* 110 Cal. 122, [42 Pac. 453]; affirmed, 120 Cal. 86, [52 Pac. 139]; *Lindblom* v. *Round Valley Water Co.,* 178 Cal. 450, [173 Pac. 994].) This rule, however, is inapplicable to the facts of the present case. Whatever rights were acquired by plaintiff to take an increased amount of water to meet accruing needs were not within the rule prescribing a definite period for loss by nonuse of rights acquired by prescription or under the provisions of the Civil Code. The rights acquired by diversion prior to defendant's entry were acquired outright under license from the federal government, and not by mere occupancy. This license under which the diversion was made

embraced the conditional right to take an additional amount of water to meet future needs, within the scope of the original intent, *within a reasonable time*. Five years may or may not have been a reasonable time. In this connection it should be noted, as previously indicated, that there was not any clear showing of when the preparation of additional acres of land and the diversion of water for use thereon was commenced and completed. If plaintiff had made his original diversion with the intent to take more water to irri· gate additional land, and had planned his diversion works for that purpose, but had not completed the same, or had not completed the preparation of the additional land at the time of defendant's entry, plaintiff could not lose this right to additional water by nonuse for an arbitrary period after defendant's entry, but was entitled, as part of the right itself, to a reasonable time under all the circumstances of the case within which to exercise the right to divert an increased amount of water and use it for beneficial purposes as originally intended.

[8] It follows that the quantity of water to which plaintiff is entitled by right of diversion is the quantity actually used for beneficial purposes at the time of the original diversion, and which was reasonably necessary for such purposes, plus any additional quantity intended to be applied to future needs at the time of the original diversion, which has been actually put to use within a reasonable time, measured by all the circumstances of the case, after the original diversion, and which was reasonably necessary therefor.

[9] It, perhaps, should be said that this rule, whereby the right of an appropriator to take at a later date water in excess of that which he diverted and put to beneficial use in the first instance, may relate back to the inception of his work although he has not complied with the code requirements, does not hold as against an intervening appropriator who does comply with the code requirements. As against such an intervening appropriator, the first has, under section 1419 of the Civil Code, only such right as was perfected by diversion and beneficial use at the time the intervening appropriator commences his appropriation by posting his notice. But the code section by its terms destroys the right of relation back of an appropriator who does not comply with the code only as to a subsequent appropriator who does. As to

all others, his rights are not affected by the code provisions and are to be determined by the law governing the subject of appropriations as it exists independently of the code. (*Wells* v. *Mantes,* 99 Cal. 586, [34 Pac. 324]; *Senior* v. *Anderson,* 115 Cal. 496, 47 Pac. 454.)

[10] In addition to any rights thus acquired by diversion before defendant's entry, plaintiff, as previously stated, might, of course, after defendant's entry, increase the quantity of water to which he was entitled as against defendant, who was a riparian owner, by prescription, that is, by diverting and using a certain quantity of water "continuously, uninterruptedly, and adversely for a period of at least five years." (*Smith* v. *Hawkins,* 110 Cal. 122, [42 Pac. 453].) A right acquired by prescription is likewise limited to the amount of water reasonably necessary for the beneficial purpose for which it is diverted, and no title by prescription can be acquired to that part of a diversion which is excessive of such needs. (*California Pastoral etc. Co.* v. *Madera etc. Irr. Co.,* 167 Cal. 78, [138 Pac. 718].) Whether plaintiff rests his right to the water upon diversion under the federal statutes, or upon prescription, the quantity of water to which he is entitled is dependent upon the quantity of water reasonably necessary for the beneficial uses to which it was applied, as well as to the amount actually applied to such uses.

[11] Viewed in the light of these principles, the judgment of the trial court must be reversed because of the error, pervasive and perversive of both trial and judgment, in assuming that the capacity of plaintiff's ditch at the time of the original diversion, prior to defendant's entry, was the measure of his rights, irrespective of beneficial use.

That this was the theory of counsel for plaintiff at the trial is indicated by their opening statement: "But we shall claim that . . . no question arises in this case as to the beneficial use of water. For instance: That the government of the United States said to George Haight: 'You have constructed this ditch. You own that land. You took this ditch on government land and you have a right to all the water that that ditch will carry, whether you can put it to a beneficial use or not.'" The following colloquy occurred at the trial: The court: "Is the question of necessary use involved in this case?" Attorney for plaintiff: "Well, the other side contends that it is. We contend that it is not."

Doubtless, because of the erroneous assumption that the capacity of the ditch, since it diverted water on government land, determined plaintiff's rights, the testimony offered on behalf of plaintiff merely tended to prove that his ditch had been running full for about twenty or thirty years last past and that plaintiff's predecessor in interest and plaintiff had irrigated his land with water from the ditch during all of that time.

[12] Defendant's rights as a riparian owner were proved when he showed his entry upon land riparian to the stream. At the time when defendant became possessed of riparian rights, when he made entry in 1886, plaintiff was, as the record shows, using only enough water for stock and domestic purposes and for the irrigation of six acres of land, and defendant's riparian rights were subject to plaintiff's right to take such an amount of water. If plaintiff had, at the time of his original diversion, planned to take additional water to irrigate newly cultivated land, had planned his diversion works for that purpose, had not completed the works or the preparation of his land at the time of defendant's entry and continued thereafter with due diligence to prepare such land and use the additional water, the burden was upon him to prove these facts. (*Gardner* v. *Wright,* 49 Or. 609, [91 Pac. 286]; 3 Kinney on Irrigation, 2d ed., p. 2802.) [13] Likewise, if plaintiff acquired a right to more water after defendant's entry by adverse use for a period of five years, the burden was upon plaintiff to show that fact. (*Gurnsey* v. *Antelope Creek etc. Water Co.,* 6 Cal. App. 387, 392, [92 Pac. 326].) [14] There is no evidence of due diligence, or any diligence, in perfecting a previously initiated diversion for a larger amount than he was using at the time of defendant's entry; nor was there any evidence showing an acquisition of an additional right by adverse user. When asked how much of the water from the ditch was needed for the irrigation of his twenty-two acres of land since January, 1910, plaintiff replied: "All that was in it." This evidence was introduced at the close of the trial upon permission to reopen the case obtained after oral argument. It is to be noted that plaintiff himself testified that, in the irrigating season, his ditch *ran about two-thirds full.* Taken as a whole therefore, plaintiff's testimony can only mean that,

since January, 1910, thirty-two miner's inches of water were needed (not actually used) for the irrigation of twenty-two acres. Furthermore, the evidence shows that in 1915 only fifteen acres were under irrigation, so the whole twenty-two acres could not have been under irrigation continuously for five years before the commencement of this action, in 1916, nor could the right to take water for the irrigation of the additional seven acres relate back to the original diversion, for there was clearly no reasonable diligence in the preparation of this additional land. Therefore, under the circumstances disclosed by the record, the evidence as to the amount of water needed for the irrigation of twenty-two acres was incompetent and irrelevant.

It is obvious that plaintiff did not show a right to more than enough water to irrigate six acres. The finding that, for more than thirty-five years plaintiff has diverted and *used* forty-eight miner's inches, which is the capacity of the ditch and far more than is necessary for the irrigation of six acres, is wholly unsupported by the evidence, and the judgment awarding plaintiff forty-eight miner's inches cannot be sustained.

[15] It is important, in the event of a new trial, that the parties be advised that the mere fact that the ditch was full or carried a certain quantity of water throughout the season is of no consequence, unless all of the water so carried was put to a beneficial use all of the time. That is to say, the amount of water *beneficially used* during the entire season is determinative of the quantity to which plaintiff is entitled. If, for example, the plaintiff kept the ditch running full for four months continuously, but used the water only two months in the aggregate, he would gain a right to receive only one-half of the water flowing in the ditch, or to all of it for one-half of the time.

The judgment of the court was also erroneous in proceeding upon the theory that the flow of the North Fork is one hundred miner's inches during the irrigating season, whereas, according to the undisputed testimony, the flow is only eighty miner's inches.

The amount of damages to be awarded plaintiff will have to be ascertained after the number of acres which plaintiff is entitled to have irrigated with the water from his ditch is

definitely determined in accordance with the principles above set forth.

The judgment is reversed.

Shaw, J., Olney, J., Angellotti, C. J., Lawlor, J., Wilbur, J., and Sloane, J., concurred.