Filed 12/18/20  L.K. Hollenbeak Logging v. Negus CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| L. K. HOLLENBEAK LOGGING, CO., <br><br> Plaintiff, Cross-defendant and Appellant, <br><br> v. <br><br> BRUCE NEGUS et al., <br><br> Defendants, Cross-complainants and Respondents. | C080527 <br><br> (Super. Ct. No. 12CV062) |

L.K. Hollenbeak Logging Company (the Company) sued two of its neighbors after they allegedly interfered with its ability to divert water from a creek.  It later obtained a court ruling that granted it nearly everything it sought.  The court recognized the Company's right to divert water from the creek, awarded the Company damages for the water it lost, and enjoined the Company's neighbors from further diverting water in a manner that would interfere with the Company's water rights.  In the Company's view,

however, the court should have gone further; it should have found the Company's water rights were more expansive, determined the precise quantity of water that each party could divert, and appointed a special master to resolve future issues between the parties. We disagree and affirm.

BACKGROUND

The parties all own land adjacent to a creek known as Big Creek in Trinity County, and they all divert water from the creek through a ditch that starts on the property of one landowner (named Richard Farmer) and then passes, along with the creek, through their respective properties.

In 2012, the Company sued Bruce and Mike Negus because they allegedly interfered with the Company's ability to divert water from the creek. According to the Company's complaint, the Neguses trespassed onto the Company's easement along the ditch, interfered with the Company's efforts to clean and maintain the ditch, cut the Company's locks and chains at the diversion point on Farmer's property, and diverted water intended for the Company's property, Big Creek Ranch. Based on this alleged conduct, the Company sought damages and injunctive relief.

The Neguses, joined by Farmer and Glenda Harrison (collectively respondents), countersued the Company and Scott Murrison, the Company's controlling shareholder. They alleged the Company and Murrison, among other things, damaged the ditch and interfered with respondents' ability to use and maintain the ditch. Respondents sought damages, declaratory relief about the parties' respective water rights and ditch rights, and injunctive relief prohibiting the Company and Murrison from modifying the ditch and limiting their use of the ditch.

Following a bench trial, the court found largely in favor of the Company. Starting with the parties' competing claims for damages, it first found "Bruce Negus trespassed on [the Company's] property by removing locks at the diversion point which resulted in a loss of water to [the Company]." Based on this conduct, it awarded the Company

2

nominal damages for the damaged locks and chains and actual damages for losses "caused due to water diversions." The court rejected respondents' competing claims for damages.

The court turned next to the parties' rights to divert from the ditch. According to the Company, parts of Big Creek Ranch hold riparian rights and the remaining parts hold pre-1914 appropriative water rights.[1] But the court agreed with the Company only in part. It found all parties hold "riparian rights to Big Creek water whether that water is taken directly from Big Creek or from the 'Big Creek Ditch,' " but it found "no evidence that any party has any water right that is other than riparian." The court also found the Company has a prescriptive right to use the ditch and the diversion structure located on Farmer's property.

The court next described the parties' respective rights to maintain and manage the ditch and the diversion structure on Farmer's property. It first discussed the parties' general rights to use the ditch, stating all parties have a right to (1) "maintain the ditch including going on the property of others, provided that the maintenance being performed is consistent with the rights of the other property/easement owners and does not

---

[1]     California recognizes three primary types of water rights for surface water: riparian rights, pre-1914 appropriative water rights, and post-1914 appropriative water rights. (See *California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 429; *People v. Shirokow* (1980) 26 Cal.3d 301, 307.) Riparian rights are based largely on a landowner's location. In general, under the riparian rights doctrine, a landowner abutting a stream has the right to divert water from that stream. (*Rancho Santa Margarita v. Vail* (1938) 11 Cal.2d 501, 528.) Appropriative rights, in turn, are principally based on a person's prior use of water. We refer to some appropriative rights as pre-1914 rights because they were acquired before December 19, 1914, the effective date of an act that established the current permitting scheme for new appropriative rights. And we refer to other appropriative rights as post-1914 rights because they were acquired after that date under the state's current permitting scheme. (See *Shirokow,* at p. 307 & fn. 6; *Haight v. Costanich* (1920) 184 Cal. 426, 431; *Millview County Water Dist. v. State Water Resources Control Bd.* (2014) 229 Cal.App.4th 879, 889, fn. 7.)

3

unreasonably burden the other owners," and (2) "make adjustments to water diversion if such adjustments are necessary to meet the water rights of the respective party." It then discussed the Company's additional right to, with certain limitations intended to protect respondents, (1) "manage the diversion point both for the purpose of water distribution and to comply with the water needs of any appropriative user and the Dept. of Fish and Wildlife," and (2) "make such repairs as are necessary to the diversion point and the ditch itself."

Finally, the court granted each of the parties some of their requested injunctive relief. Starting with the Company's requested injunctive relief, the court enjoined respondents from (1) making any adjustments to water diversions "without first notifying [the Company] 48 hours before taking any such action," (2) "diverting water if to do so would interfere with the water rights of upstream water users," and (3) "interfering with [the Company's] management of the diversion si[te] provid[ed] that said management is not unreasonable." Turning next to respondents' requested injunctive relief, the court limited the Company's ability to use heavy equipment on respondents' properties when maintaining or repairing the ditch, and enjoined the Company "from making alterations to the ditch which would change the nature of the ditch itself."

The Company afterward filed a request for a statement of decision. In the request, the Company, among other things, asked the court to appoint a special master "to resolve future conflicts and disputes in implementation of the Court[']s judgment." But the court denied that request, finding it exceeded the scope of a request for a statement of decision.

The Company timely appealed.

## DISCUSSION

Although its brief is at times difficult to follow, the Company appears to challenge the trial court's decision for three principal reasons.

First, it contends the trial court wrongly found "the issue of the existence of non-riparian or appropriative rights was neither pled or evidenced at trial and in the

4

pleadings." The court, however, never said "the issue of the existence of non-riparian or appropriative rights" was never pled. It said as much only about certain prescriptive rights. And although the court perhaps overstated the point in saying "[t]here [wa]s no evidence that any party has" appropriative rights, we find no error in the court's declining to find the Company held appropriative rights.

To show the court should have found otherwise, the Company focuses on the manner in which Big Creek Ranch has historically been irrigated. It contends the evidence at trial showed the riparian parts of Big Creek Ranch had been irrigated since the latter half of the 1800's, and, because of the manner in which these lands were irrigated, the irrigation of these riparian parts of the ranch "unavoidabl[y]" also resulted in the irrigation of the nonriparian parts of the ranch throughout this period. That is so, the Company reasons, because "the ditch water must, due to the geography and gravity, traverse the [higher elevation] 'non-riparian' parcel lands to reach the [lower elevation] riparian lands at Big Creek Ranch." In other words, according to the Company, the nonriparian parts of its ranch hold pre-1914 appropriative water rights because, before 1914, these parts of the ranch were used as a conduit to transport water to the riparian parts of the ranch.

We reject this argument. Pre-1914 appropriative water rights are one of two types: nonstatutory pre-1914 rights, the type relevant here, and statutory pre-1914 rights. (*Haight v. Costanich, supra*, 184 Cal. at p. 431.) To establish a nonstatutory pre-1914 right, a water user had to appropriate water and beneficially use that water before December 19, 1914, the effective date of an act that established the current permitting scheme for new appropriative rights. (*Ibid.*; see also *People v. Shirokow, supra*, 26 Cal.3d at p. 309.) But a water user has not beneficially used water on a property merely because it used that property as a conduit to transport water to another property. Under those circumstances, the diverter has at most beneficially used the water on only one property—the property that ultimately received the water. Because the Company's

5

argument here focuses only on the portion of its property that served as a conduit for transporting water, and not on the portion of its property that actually beneficially used that water, we reject it.

Next, the Company contends the court "failed to deal with and resolve the issues of beneficial, reasonable, and non-wasteful uses by the parties and the quantity of those uses." But the trial court did resolve that issue to the extent required in this litigation. In awarding the Company damages for the water it lost as a result of the Neguses' conduct, the court at least presumed the Company's intended use of that water was reasonable, beneficial, and lawful. The Company, after all, would not have suffered any damages had its intended use of the water been unlawful. But according to the Company, it is not enough that the court ruled in its favor on the claim it raised; the court also should have quantified the precise amount of water that the parties could use on their respective properties going forward. We disagree. The Company never shows it asked the trial court for this particular relief, and so we decline to find the court erred in not addressing that issue.

Finally, the Company argues the court erred in declining to appoint a special master to resolve future disputes between the parties. We reject this claim too. The Company asked for a special master only in its request for a statement of decision. But a request for a statement of decision requires the court only to address current controverted issues (Cal. Rules of Court, rule 3.1590(d)), not to set up a mechanism for resolving future controverted issues. The court thus rightly found "[t]he request for the appointment of a special master exceeds the scope of a request for statement of decision."

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


                                              /s/
                                    BLEASE, Acting P. J.



We concur:



       /s/
MAURO, J.



       /s/
RENNER, J.