[Civ. No. 1136. Third Appellate District.—December 4, 1913.]

## MERTIE C. TRIMBLE, Respondent, v. S. W. HELLAR, Appellant.

WATERS AND WATERCOURSES—AMOUNT OF APPROPRIATION—HOW DETERMINED.—Priority in the use of waters and the capacity of the ditch through which they are diverted do not necessarily establish the extent of the right. The true test is the amount of water actually used for beneficial purposes.

ID.—MEASURE OF APPROPRIATOR'S RIGHT—AMOUNT OF WATER ACTUALLY USED OR NEEDED.—The appropriator's right is measured by what he in fact uses for some useful or beneficial purpose, not what he might have used; and if the capacity of the ditch is greater than is necessary to irrigate his lands, he will be restricted to the quantity of water needed for purposes of irrigation, watering stock, and domestic purposes.

ID.—IRRIGATION—RIGHT TO ENLARGE USE OF WATER.—Where the purpose for which water is appropriated is the irrigation of land, the appropriator is not confined to the amount first used, but is entitled to such further amount of water, within the capacity of his ditch, as will be required for future improvement of his land, if

the right is otherwise kept up; but this right to enlarge the use may be lost by nonuser for a long period of time, and the appropriation of the water meantime by others.

ID.—AMOUNT OF APPROPRIATION—CIRCUMSTANCES INDICATING.—In determining the amount of water to which a claimant is entitled, the acts and conduct of the first appropriator at the time of his appropriation, his object in making the appropriation, the quantity of land capable of irrigation, the necessity for irrigation, together with his actual appropriation and use, must be considered.

ID.—ACTION TO DETERMINE CONFLICTING WATER-RIGHTS.—In this action to determine conflicting claims to the waters of Kerlin Creek, in Trinity County, it appears that the defendant never did, either by the acts of his predecessors in interest or by his own acts, acquire a right to a greater quantity of the waters of the creek than that allowed him in the judgment, that is, one-half thereof.

ID.—JUDGMENT—NECESSITY OF DEFINITELY FIXING QUANTITY OF WATER —EQUITABLE DIVISION.—The failure of the court in such action to indicate definitely in its judgment the quantity of water to which each party is entitled is not objectionable where it appears that the flow of the stream is shown to vary greatly at different seasons of the year, that for a long period of the time the claimants have used substantially the same quantity and found it sufficient for their purposes, and that there have been no other users.

ID.—WATER-RIGHT—GRANT BY IMPLICATION.—Where a water-right is appurtenant to land, it passes with a conveyance of the land, irrespective of whether the deed, in terms, conveys the "appurtenances."

ID.—APPROPRIATION—NOTICE AS DETERMINING QUANTITY OF WATER.— Where an appropriator of water posts a notice of his claim to an amount of water in excess of what he appropriates, this will not affect the rights of other appropriators. His right is not measured by the extent of his appropriation as stated in the notice, or by the actual diversion from the stream, but by the extent to which he applies the waters for useful or beneficial purposes.

APPEAL from a judgment of the Superior Court of Trinity County. James W. Bartlett, Judge.

The facts are stated in the opinion of the court.

Scrivner & Montgomery, for Appellant.

H. R. Given, and John S. Reid, for Respondent.

CHIPMAN, P. J.—This is an action to determine the conflicting claims of plaintiff and defendant to the waters of a

certain creek known as Sam's Creek or Kerlin Creek, in Trinity County. It appears that this creek carries at flood season quite a large quantity of water, more than either party ever used or had use for, but the quantity rapidly diminishes, after the rainy season is passed, to a flow, during the months of August and September, of not to exceed thirty miner's inches. Both parties are owners of ranches to which water from this creek was conveyed by ditches constructed by their predecessors in estate more than twenty years prior to the commencement of this action. The ditch leading to plaintiff's land, or the Trimble Ranch, is known as the Trimble ditch and that leading to defendant's land, or the Kerlin Ranch, as the Kerlin ditch. There is some conflict as to the carrying capacity of these ditches but there was evidence that the Trimble ditch would convey about one hundred miner's inches of water and defendant's ditch about one hundred and forty-four miner's inches. The evidence was that defendant's ditch was first in time.

Plaintiff claims a right to one hundred miner's inches of the waters of said creek for irrigating and domestic purposes and alleges such use thereof for over twenty years; she alleges the destruction by defendant of her dam erected on said creek at the head of her ditch whereby she was damaged five hundred dollars and was deprived of the use of said waters, and prays for an injunction to restrain defendant from interfering therewith.

Defendant denied plaintiff's right as to the waters of said creek, admitted destroying the dam of the Trimble ditch and, by cross-complaint, alleged the ownership as a first right to the waters of said creek to the extent of one hundred and forty-four miner's inches for irrigating and domestic purposes. By an amendment to her complaint plaintiff alleged that the said creek affords sufficient water if properly conserved and used, to irrigate both the Trimble and Kerlin places and this is denied by defendant. No question of riparian rights arises. Plaintiff's dam, at the head of the Trimble ditch, is two or three hundred yards above the dam at the head of defendant's ditch.

Findings numbered 1, 2, 4, 5, 6, 7, 8, 9, 11, 17, 18, 19, and 20 are challenged as unsupported by the evidence. The facts found and challenged may be thus summarized: That plain-

tiff is the owner of the so-called Trimble ditch, conveying water to plaintiff's premises, and also appurtenant to said ditch, one-half of the water flowing in said Sam's Creek at the point where the dam of the Trimble ditch is situated, to the extent of not exceeding one hundred miner's inches of water (I); that plaintiff and her predecessors have been the owners of said ditch and water, except when interfered with by defendant as herein specified, for more than twenty years last past (II); that said ditch and water as specified in finding I are appurtenant to said Trimble Ranch and have so been for the past twenty years, and, except as already stated, have been used for irrigation, household, domestic, and other beneficial purposes (IV); that, about August 23, 1908, and divers times since, defendant wrongfully destroyed plaintiff's dam and diverted said water from plaintiff's said ditch (V); by reason whereof plaintiff has been unable to obtain water for household purposes or to irrigate her said ranch as she was accustomed to do and her crops thereon have dried up and been lost (VI); said loss was of the third crop of each of the three years immediately preceding the commencement of the action, of the value of one hundred and fifty dollars (VII); and defendant threatens to continue to so divert the said water (VIII) and such act will, if continued, cause plaintiff irreparable injury to her estate (IX); and the use of said water by plaintiff and her predecessors has not been subject to defendant's first right to one hundred and forty-four inches of said waters or any thereof (XI); that plaintiff claims an interest in and right to said waters of said creek adversely to defendant and the same is not without right but is an estate and interest as specified in finding I (XVII); that plaintiff is now and for more than twenty years last past she has been, through her predecessors in interest, the owner of the right to the waters of said creek as specified in finding I, which said waters were at all times during said period conveyed through said ditch to plaintiff's said ranch and used thereon for beneficial purposes, except when interfered with by defendant as hereinbefore set forth (XVIII); that during said last named period plaintiff has by her grantors and predecessors claimed, used, and possessed said water-right set forth in finding I and during said period said right and said ditch have been appurtenant to said ranch, and said waters have

been used thereon all said time except when diverted by defendant as hereinbefore found, and such use has been adverse to the right of defendant and his predecessors in interest (XIX) ; and open, notorious, exclusive, and adversely to defendant and all other persons (XX). The foregoing findings relate to plaintiff's rights and interests. As to defendant's rights the court found: That defendant has not been and is not now the owner of the first right to said waters to the extent of one hundred and forty-four inches, but for the past thirty years he and his predecesors in interest have been and he now is the owner of one-half of the waters flowing in said creek at the point where the said Trimble dam is situated and any waters coming into said creek between said Trimble dam and defendant's dam to the extent of one hundred and forty-four inches measured under a four-inch pressure (X) ; that the right found in finding X is the only right defendant now has or his predecessors ever had to the waters of said creek (XII) ; and defendant and his predecessors have not used and defendant is not now using said waters for any beneficial purpose, openly, notoriously, exclusively, or adversely to plaintiff's right, and defendant's and his grantors' use has been only of that portion of said waters as in finding X set forth (XVI).

Finding XXI is as follows: "That there is sufficient water in Sam's Creek (also known as Kerlin Creek) during the irrigating season of each year to supply both the plaintiff and defendant with sufficient water each for irrigating, domestic, and other useful and beneficial purposes, provided the same be properly conserved."

As conclusions of law the court found: That plaintiff is the owner of the ditch mentioned in finding I and "of one-half of the waters flowing in Sam's Creek mentioned in finding No. 1, at the point thereon where the dam of the said Trimble ditch is situated to an extent not exceeding one hundred inches measured under a four-inch pressure" and that said ditch and right to the waters of said creek are appurtenant to said Trimble Ranch. "Defendant is the owner of one-half of the waters flowing in said Sam's Creek at the point thereon where the dam of said Trimble ditch is situated, and any additional waters coming into said stream between the said Trimble dam and the defendant's dam, to

an extent not exceeding one hundred and forty-four inches measured under a four-inch pressure." The following direction is also given: "That plaintiff, shall provide and install at the point on Sam's Creek, where the said Trimble ditch is situated, such proper and necessary appliances as will divert from said Sam's Creek at that point, one-half of the waters flowing in said creek at that place to an extent not exceeding one hundred inches measured under a four-inch pressure, and permit the other half of the water of said creek at that point to flow down the said creek in order that it may reach the dam of defendant at the head of Kerlin ditch." It is also found as conslusion of law that plaintiff is entitled to recover damages in the sum of one hundred and fifty dollars and costs of suit and is entitled to an injunction perpetually enjoining defendant from diverting from said Sam's Creek, at the point designated, "more than one-half of the waters flowing in said Sam's Creek at said point, and from in any way interfering with the said Trimble ditch and plaintiff's right to the waters of Sam's Creek as specified in finding No. 1 and her use thereof." Judgment was accordingly entered in favor of plaintiff. Defendant appeals from the judgment and brings the record here under the alternative method.

It would greatly and unnecessarily prolong this opinion to quote the evidence. There is considerable conflict upon some phases of the case, but a careful reading of the record satisfies us that the following statement of the learned trial judge, taken from his written opinion certified up to us, is fully justified. We quote: "The evidence shows that the Trimble ditch was constructed in 1883 by the predecessors in interest of the plaintiff, and that thereafter during every year until 1908 the waters from Sam's Creek were diverted through it upon the Trimble place and there used for domestic and irrigating purposes; that the Kerlin ditch was constructed prior to the Trimble ditch, and used each year thereafter in conducting water for irrigating and domestic purposes to and upon the Kerlin place; that in the spring of each year a dam was placed in Sam's Creek at the head of the Trimble ditch to divert the water into the Trimble ditch, and that until 1904 the waters of Sam's Creek were diverted into the Kerlin ditch by means of a head box placed in the spring of

each year at the head of the ditch and connecting it with the stream.

"At the commencement of the year 1904 both the Trimble and Kerlin places were being cultivated to about the same extent, from five to eight acres at each place, the crops raised being of similar character, save for alfalfa, of which there was more in cultivation on the Trimble place than on the Kerlin place at that time. None of the parties who at this time owned or occupied the places had ever had any trouble over the waters of Sam's Creek, and both had had, notwithstanding some crude and wasteful methods of appropriation and use, as disclosed by the evidence, an ample sufficiency of water for irrigation and domestic purposes upon both places.

"In the spring of 1904 one B. F. Russell became the purchaser of the defendant's premises, then commonly known as the Kerlin place, and thereafter and before transferring the same to defendant said Russell repaired the flumes and dam of the Kerlin ditch, and cleared up and put under cultivation and prepared for irrigation several acres of land additional to those formerly cultivated and cropped by the owners and occupants of the Kerlin place, much of this newly cultivated land being seeded with alfalfa, a crop which in its early stages requires a considerable amount of irrigation.

"During 1905 the Kerlin place was under a lease to one W. J. Henry, who personally conducted the farming operations thereon from April 16th to November 10th of that year. Since the expiration of the Henry lease the defendant has owned and cultivated the Kerlin place. . . . Prior to the purchase by Russell of the Kerlin place but little alfalfa had been grown thereon, the usual crops having been grain, hay and fruit and garden vegetables.

"To properly solve the matters in controversy between the parties requires mainly the determination of this question: To what extent had the waters of Sam's Creek been appropriated and used by plaintiff and the predecessors of defendant at the time of the purchase of the Kerlin place in 1904 by B. F. Russell through whom defendant deraigns his title, so as to give the parties to this action a fixed right to some certain portion of the waters of said stream? Prior to this time, and for over five years prior to the purchase of the Kerlin place by Russell, the evidence shows an open, peace-

able, notorious use of waters from the stream upon both the
Trimble and Kerlin places, for useful and legitimate pur-
poses, under claim of right, and without dispute or inter-
ference. During this long period of at least sixteen years,
all the evidence substantially shows that the stream afforded
sufficient water for the irrigation of about the same amount
of lands and crops on both the Trimble and Kerlin places.
And that there was sufficiency of water for an increased
irrigable acreage in both places if properly conserved is
plainly evident from the testimony of the witness Henry who
cultivated the Kerlin place after its cultivated acreage had
been increased and character of crops raised thereon changed,
and who by a mutual arrangement with the husband of the
plaintiff, such as neighbors should more often adopt and pre-
vent actions like this from arising, enabled the raising and
harvesting of the crops on both places during 1905 without
loss or injury to either party.''

Much of the criticism of the instructions rests, we think,
upon a misconception of defendant's right to wit: that the
capacity of his ditch determines the extent of his right to the
water.

It is true that defendant's ditch was first in time as was
the use of the waters of Sam's Creek by means of this ditch.
It is true also that the ditch had a capacity of one hundred
and forty-four miner's inches of water. But priority in the
use of these waters and the capacity of the ditch do not
necessarily establish a right to one hundred and forty-four
miner's inches of the water. The size of the ditch is a factor
in aid of the intention of the party making the appropriation
of the water. It is not, however, conclusive. The true test
is the amount of water actually used for beneficial purpose.
Section 1411 of the Civil Code provides that ''The appropria-
tion must be for some useful or beneficial purpose, and when
the appropriator or his successor in interest ceases to use it
for such a purpose, the right ceases.'' So, also, is it true
that the appropriator's right is measured by what he in fact
uses for such a purpose, not what he might have used. If
the capacity of the ditch is greater than is necessary to irri-
gate the lands of the appropriator he will be restricted to the
quantity of water needed for the purposes of irrigation,
water-stock, and domestic purposes. Where the purpose is

the irrigation of land he is not confined to the amount used, but is entitled to such further amount of water, within the capacity of his ditch, as would be required for future improvement of his land, if the right is otherwise kept up. But this right to enlarge the use may be lost by nonuser for a long period of time and the appropriation of the water meantime by another appropriator. The acts and conduct of the first appropriator at the time of his appropriation, his object in making the appropriation, the quantity of land capable of irrigation, the necessity for irrigation together with his actual appropriation and use, must be considered. These and other rules are well stated by Mr. Justice Hawley in *Hewitt* v. *Story,* 64 Fed. 510, [30 L. R. A 265, 12 C. C. A. 250]. (See the many cases there cited.) Said the learned judge: ''The diversion of the water ripens into a valid appropriation only where it is utilized by the appropriation for a beneficial use; and the surplus or waste water of a stream may be appropriated, subject to the rights of prior appropriators, and such an appropriator is entitled to use all such waters; that in controversies between prior and subsequent appropriators of water, the question generally is whether the use and enjoyment of the water for the purpose to which the water is applied by the appropriator have been in any manner impaired by the acts of the subsequent appropriator.'' Applying these principles to the case in hand, it is quite apparent that the defendant never did, either by the acts of his predecessors in interest or by his own acts, acquire a right to a greater quantity of the waters of Sam's Creek than has been allowed him in the judgment, to wit: one-half thereof.

There was evidence that the Trimble ditch was built in 1883; its head is above the head of defendant's ditch a short distance and its use for conveying water to the Trimble place was well known to the users of water through the Kerlin ditch. The evidence was that the use made of the water was for domestic purposes and only a few acres were irrigated, and that about an equal acreage was irrigated on the two places and for like purposes and substantially the same quantity of water utilized. This mutual use of the water was open, notorious and under claim of right respectively by the parties using the water and continued uninterrupted for

nearly twenty years and this use was never materially interfered with or seriously disputed until in 1908 when defendant destroyed plaintiff's dam. In speaking of the evidence the learned trial judge said:

"The evidence is somewhat conflicting as to the amount of water at first taken from the stream through either the Kerlin or Trimble ditches, and the appliances at the head of both ditches prior to 1904 having been of a crude and temporary nature, the extent of the appropriation to any reasonable degree of certainty, must be determined through a consideration of the purposes for which the water was needed, the amount of lands cultivated, and the character and amount of crops raised.

"The purpose for which the water is and was needed on both places, their similar cropping and cultivation, their nearness in vicinage, their like want of proper storage facilities, the nearness of the points of appropriation on the stream, the absence of any tributaries or feeders of Sam's Creek reaching that stream between the heads of the respective ditches, the fact that the stream furnished sufficient water with reasonable use to irrigate both places, and the use without conflict for a long series of years prior to 1908, forces the conclusion that each of the users of the water appropriated the same substantially, to an equal extent and that the rights to the use of the waters should be fixed and determined on that basis."

Attention is called to the fact that it does not appear that the deeds under which plaintiff acquired title to her land made any reference to the Trimble ditch or the water of Sam's Creek. The muniments of title were not introduced by either party, it having been stipulated that they were the owners, respectively, of the lands claimed by them.

No objection was made to the evidence of the use of the Trimble ditch and the waters of Sam's Creek as belonging to the owner of the Trimble place. That this ditch and water were used and enjoyed by the owner of the Trimble place and claimed as belonging to it very clearly appears. The grant of the land carried with it, by implication, this ditch and the water conveyed through it as incident to the land. It is altogether probable that the deeds conveyed the "appurtenances" in terms, but whether they did is not material. It was held in *Cave* v. *Crafts,* 53 Cal. 135: "The word 'ap-

purtenance' is not necessary to the conveyance of the easement. The general rule of law is, that when a party grants a thing, he by implication grants whatever is incident to it and necessary to its beneficial enjoyment. The incident goes with the principal thing.'' (*Rubio Cañon etc. Assoc.* v. *Everett,* 154 Cal. 29, 32, [96 Pac. 811] ; *Stanislaus Water Co.* v. *Bachman,* 152 Cal. 716, 724, [15 L. R. A. (N. S.) 359, 93 Pac. 858].)

We do not think defendant's rights were enlarged or strengthened by the terms used in the deed to him in 1905, which purported to convey the Kerlin ditch and one hundred and forty-four miner's inches of the waters of Sam's Creek. The rights of plaintiff had attached long prior to that date, and in fact there was evidence that her rights were not questioned at that time. Defendant's grantor could not convey something he did not own.

Neither did the fact that defendant's predecessor, Kerlin, posted a notice of his claim to one hundred and forty-four miner's inches of water at the head of his ditch affect plaintiff's rights. ''His right is not measured by the extent of his appropriations as stated in the notice, or by the actual diversion from the stream, but by the extent to which he applies the waters for useful or beneficial purposes.'' (*Hufford* v. *Dye,* 162 Cal. 147, 153, [121 Pac. 400].)

Finding XXI is attacked as a solution of the controversy entirely without support in the evidence. The contention is that the finding is inconsistent with the theory of the original complaint, and is based upon the amendment thereto. This amendment was filed before the trial and became as much a part of the complaint as if originally incorporated in it. We do not see, however, that, because the parties both claimed a definite quantity of the water, the court was precluded from making an equitable division of it without indicating a given number of miner's inches to each. In view of the fact that the flow of the stream varied greatly at different seasons of the year, and as there was evidence that for a long period of time the claimants to the water had used substantially the same quantity and found it sufficient for their purposes, it seems to us that the simplest as well as the most equitable method of division and the one least likely to give rise to future trouble, was that adopted by the court. By it plaintiff

can take no more than one-half of the water at any stage. The other half at all times must be allowed to pass to defendant's ditch. It is true that, in most cases, it becomes the duty of the court to fix definitely the quantity of water to be taken or the quantity of land to be irrigated (*Watson* v. *Lawson,* 166 Cal. 235, [135 Pac. 961], cited by appellant) ; but where, as here, it is only at the season of the year when the water is low that the parties use all of it for beneficial purposes, the quantity is immaterial inasmuch as there are no other claimants and as each is allowed what he is entitled to,—namely, one-half. We cannot see that defendant is prejudiced or injured in any way by this adjustment of the respective rights involved. Defendant rests his contention, as he does elsewhere, upon the claim that plaintiff's rights are subordinate to his and hence should have been definitely fixed. But we have seen that such contention is not borne out by the evidence. There is evidence that justifies the division of the water as made by the trial court and that as to the use of the water the parties stand upon an equal footing. The form of the judgment is, therefore, without objection. (*Harris* v. *Harrison,* 93 Cal. 676, 680, [29 Pac. 325].)

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 2, 1914.