[Civ. No. 5231.   Third Appellate District.—June 10, 1937.]

G. I. AKIN, Respondent, v. GEORGE A. SPENCER et al., Appellants.

Butler, Van Dyke & Harris and Hugh P. Strachan for Appellants.

Henry S. Lyon and Robert E. Roberts for Respondent.

PULLEN, P. J.—In this action plaintiff sought to establish a right by prior appropriation in a stream known as Coon gulch in the county of El Dorado. Coon gulch rises in a spring on the lands of defendants and flows northerly across their land and on to the adjoining lands of plaintiff. Inasmuch as in its entire course Coon gulch is on the property of the parties to this action, only the rights of these parties are involved.

In the complaint it is alleged that while the lands of both the plaintiff and defendants were public domain of the United States, the predecessors of plaintiff entered upon lands subsequently patented to the predecessors of plaintiff and diverted all of the waters of Coon gulch and beneficially applied said waters to the lands subsequently patented to plaintiff's predecessors and now belonging to plaintiff.

It is further alleged that since the original diversion plaintiff and his predecessors have continuously applied said waters to their lands for domestic, stock and irrigation purposes, which appropriation and use was prior in time to any diversion or use of the waters by defendants or their predecessors. It is also alleged that at no time was the quantity taken and diverted less than 14 miner's inches.

In a second cause of action plaintiff sets forth a riparian right alleging his lands are agricultural lands and require

20 inches of water from the stream for domestic, stock watering and irrigation purposes.

The answer denies the appropriation claimed by plaintiff and alleges that all but 2 inches in the stream are foreign waters brought on to the lands of defendants by artificial means and that these foreign waters percolate into Coon gulch. Defendants also assert an appropriative right in themselves and also claim that any appropriative right that plaintiff may have acquired was abandoned by plaintiff, and also that defendants have acquired a prescriptive right to take the waters of Coon gulch, such right having been acquired by continuous use of all of the waters of the stream for many years. Defendants allege that they also are riparian to Coon gulch.

The judgment of the trial court gives to plaintiff a right to take from the natural flow of the stream 14 standard miner's inches and to the extent of 14/20 of the waters when there is less than 20 miner's inches natural flow in the stream. The judgment further establishes a prescriptive right in the defendants to take 6 miner's inches, and are restricted to the use of 6/20 of the natural flow. The judgment also limits defendants in the exercise of their prescriptive right to a taking of the water at the existing point of diverson near the source of the stream although Coon gulch extends for a considerable distance across the lands of defendants.

This judgment is based upon findings that for many years prior to 1870, and while the lands of the parties were a part of the public domain, the predecessors of plaintiff appropriated and diverted all of the natural flow of Coon gulch to an amount of at least 20 inches and beneficially used and applied the same to their lands. The court further found that the original appropriation of 20 inches was, prior to the commencement of this action, diminished and reduced to 14 inches by and through an adverse user of 6 inches by defendants.

Defendants claim the findings are not supported by the evidence and the first attack is directed to the finding that plaintiff's predecessors in interest ever acquired an appropriative right to 20 inches.

It is not disputed that the lands of defendants lie upstream with reference to plaintiff and that defendants are riparian owners. ■ In view of the well-established rule that the rights of a riparian owner in the waters in a stream

are not affected by any interference with the waters of the stream after they have passed below the boundaries of the riparian land, plaintiff, in order to claim the waters of the stream, must have appropriated the waters when the land of the upstream owner was still a part of the public domain. (*San Joaquin Irr. Co.* v. *Worswick,* 187 Cal. 674 [203 Pac. 999].)

Plaintiff alleges that many years prior to 1870 and many years prior to the time that application was made for a patent to said lands, and while the lands of both defendants and plaintiff were a part of the public domain of the United States, the predecessors of plaintiff entered upon the watercourse known as Coon gulch and upon lands subsequently patented to the predecessors of defendants, and there constructed a dam and a ditch and thereby diverted the water with the intent and purpose of applying said waters to a beneficial use on the lands now owned by plaintiff.

It follows, therefore, that the extent of plaintiff's appropriative right must be determined as of a time prior to November, 1873, that being the date when the first patent in defendants' chain of title was issued. That necessitated the examination of the evidence introduced by plaintiff to determine what was the extent of the right as of that date.

It must also be borne in mind that the rule is well established that the amount of water actually diverted is not the measure of the right of an appropriation (*Hufford* v. *Dye,* 162 Cal. 147 [121 Pac. 400]), but such right is limited to the amount of water actually used and reasonably necessary for the useful purpose for which the water has been applied. (*Haight* v. *Costanich,* 184 Cal. 426 [194 Pac. 26, 30].)

The complaint also alleges that the predecessors of plaintiff took and diverted all of the waters from Coon gulch for beneficial use, i. e., for watering stock, for the irrigation of gardens and orchard land, and for domestic and other purposes, and at no time was less than 14 inches so taken and diverted.

In support of these allegations and of the findings of the court we have the testimony of four old men who recalled their early remembrances and impressions of the use of the water here in question. Thomas Swansborough testified that when he was eleven or twelve years of age he worked for Adams, the original patentee of plaintiff's lands, and at that time (approximately 1863 or 1864) Adams diverted water

out of Coon gulch to irrigate about one acre of garden and two acres of orchard, although he could not recall ever having seen the waters actually applied to the garden. The Adams family consisted of Mr. and Mrs. Adams and three daughters. The waters for the domestic use of the family was not taken from Coon gulch, but from a spring on the Adams property. The canal carried probably 20 inches of water, but the witness could not recall whether the ditch diverted all of the waters of Coon gulch or not. The live-stock consisted of three or four horses and probably a couple of cows.

Mr. William L. Toombs testified that when he was about eleven years old (1868) he used to go to the Adams property hunting and fishing, and in 1871 he worked for Adams for a short time. He could not recall definitely about an orchard on the Adams place, but he recalled a garden, about an acre in extent, and that the garden was irrigated from Coon gulch, and late in the season the ditch probably took all of the water out of Coon gulch.

Sam Kessler, Sr., was an old Indian who was unable to give the year of his birth, although one of the witnesses testi-fied that he knew him as a boy and that he was probably born in 1860 or 1861. Kessler testified that he was born and raised near the Adams place and spent a good deal of his time there as a boy, and when about twelve years of age he worked for Mr. Adams, and at that time Mr. Adams took all of the water out of Coon gulch, although he was not there when the water was high. He testified that late in the fall no water was running Coon gulch at all. Owing, however, to the inability of this witness to fix any definite time as to which his testi-mony related it is impossible to be sure as to what period of time he referred.

Charles G. Toombs testified he was born in 1861, and worked on the Adams property when he was twelve or four-teen years of age. He recalled that Adams used water from Coon gulch for domestic and stock purposes and that he had a garden and orchard. He could not recall positively that Adams used all of the waters in Coon gulch. The witness was unable to say what the quantity of the water was in Coon gulch at a time prior to 1873. From 1875 on, he testi-fied that Adams used 20 inches of water. Inasmuch as that is beyond the date when the appropriative right was initiated,

we cannot consider that evidence in measuring the scope of the rights acquired by plaintiff.

Having in mind the foregoing testimony, which is the only testimony relating to the initiation of the right we are unable to perceive any support for the finding of the court that plaintiff's predecessors appropriated 20 miner's inches of the natural flow of Coon gulch. Having in mind also that plaintiff's right is determined not by the amount taken, but by the amount beneficially used, we cannot find support in the record for an appropriation of 14 inches or that plaintiff could have beneficially used 14 miner's inches to irrigate one acre of garden and two acres of orchard and for stock watering purposes, as the evidence shows he had only a few horses and cows, and that the water for domestic use of the five members of his household came from a spring near their house.

The situation here presented is quite similar to the facts found in the case of *Haight* v. *Costanich, supra,* to which we have already referred, in which case it was held that the mere fact a full ditch of water was diverted was of no consequence unless all of the water so acquired was put to beneficial use all of the time.

Mr. F. N. Hosking, a witness called upon behalf of plaintiff, testified he was an engineer and manager of the El Dorado Irrigation District and was selling water in the area embraced within the lands here in controversy. He testified that in his opinion the Spencer property, being of a lava ash formation, would require one inch of water for two acres of land. He also testified to the effect that along the lower end of Coon gulch, where the Akin property was situated, the soil was more of a sedimentary deposit, which required less water.

It is the rule that even though all of the water at the time of the origin of the diversion is not then applied to beneficial use, still if the appropriator within a reasonable time makes improvements upon his land and sufficiently increases his cultivated acreage to beneficially use all of the water diverted, the original diversion may be justified. If, however, for an unreasonable time no additional cultivation is made, this fact should be construed as an abandonment of the original claim to divert a sufficient quantity of water to irrigate the entire tract. In the case before us we have no

testimony to show that Adams increased his irrigable lands within a reasonable time after the defendants' predecessors acquired riparian rights upon the stream. (*Senior* v. *Anderson,* 115 Cal. 496 [47 Pac. 454].)

Referring again to *Haight* v. *Costanich, supra,* we find the court saying in a similar situation:

"Defendant's rights as a riparian owner were proved when he showed his entry upon land riparian to the stream. At the time when defendant became possessed of riparian rights, when he made entry in 1886, plaintiff was, as the record shows, using only enough water for stock and domestic purposes and for the irrigation of six acres of land, and defendant's riparian rights were subject to plaintiff's right to take such an amount of water. If plaintiff had, at the time of his original diversion, planned to take additional water to irrigate newly cultivated land, had planned his diversion works for that purpose, had not completed the works or the preparation of his land at the time of defendant's entry and continued thereafter with due diligence to prepare such land and use the additional water, the burden was upon him to prove these facts. . . . There is no evidence of due diligence, or any diligence, in perfecting a previously initiated diversion for a larger amount than he was using at the time of defendant's entry; nor was there any evidence showing an acquisition of an additional right by adverse user. . . . It is obvious that plaintiff did not show a right to more than enough water to irrigate six acres. The finding that, for more than thirty-five years plaintiff had diverted and used forty-eight miner's inches, which is the capacity of the ditch and for more than is necessary for the irrigation of six acres, is wholly unsupported by the evidence, and the judgment awarding plaintiff forty-eight miner's inches cannot be sustained."

In view of the fact that both plaintiff and defendants are riparian owners in Coon gulch, and in view of the conclusion we have reached that plaintiff is not lawfully entitled to the entire flow of Coon gulch by reason of his inability or omission to show a beneficial use for the amount claimed and allowed by the court, it is necessary that the matter be re-referred to the trial court to determine and adjudge the respective riparian rights of the parties to any waters flowing naturally in the stream in excess of the amount of plaintiff's prior appropriation.

■ Criticism is also directed to the order of the court based upon the finding that plaintiff's predecessors appropriated and acquired a right to all of the water naturally flowing in Coon gulch to the extent of at least 20 standard miner's inches, which, however, was reduced to 14 miner's inches through an adverse user of 6 miner's inches by the defendants.

The court, in effect, has found that defendants acquired a prescriptive right to 6 inches of water flowing in Coon gulch but the court further finds that when the natural flow of the stream did not amount to 20 inches of water, the respective rights of the parties thereto, i. e., 6 inches and 14 inches were as the number of inches of each bore to 20. We can find no testimony in the record which would support such a distribution. If defendants have acquired a prescriptive right to 6 inches of water, that operated to reduce the original appropriation of plaintiff's 20 inches to 14 inches. If defendants have established a right to 6 inches of water by prescription they are entitled to take and use that amount of water as long as there is 6 inches of water in the stream, and if at any time there shall be less than 6 inches of water flowing naturally in the stream, defendants would be entitled to all of the water.

In *E. Clemens Horst Co.* v. *Tarr Min. Co.*, 174 Cal. 430 [163 Pac. 492], it is held that when water is taken by an adverse user and a prescriptive right thereto is acquired, the owners have a perfect and complete right to continue the diversion of the quantity so taken.

"The owner of a prescriptive right thus acquired is under no obligation to go below to ascertain or inquire whether those who there have rights in the water are receiving the usual quantity or not. His right is absolute. The consequences of his diminution of the stream must be suffered by those below. . . . The right which the defendants had acquired is a right to take a positive quantity continuously." (*E. Clemens Horst Co.* v. *Tarr Min. Co., supra.*)

Inasmuch as it appears to us that the cause must be remanded for a new trial, we do not deem it necessary to pass upon the asserted right of defendants to change the point of diversion upon their own lands, nor need we discuss the question of foreign waters, except to state that unless and until it is determined what is the amount of foreign waters

in Coon gulch, if any, it will be impossible to determine the natural flow of the stream, upon which measurement the rights of the respective parties depends.

In order to further adjudicate the rights of the parties to the water in Coon gulch it is necessary for the trial court to take further evidence in order to answer the various questions here considered.

For the reasons given, therefore, the judgment is reversed, and the cause is remanded for a new trial.

Thompson, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 10, 1937, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 9, 1937.