[No. F052948. Fifth Dist. Feb. 27, 2008.]

JOHN W. NICOLL as Trustee, etc., Plaintiff, Cross-defendant and Appellant,
v.
OSCAR RUDNICK as Trustee, etc., Defendant, Cross-complainant and Respondent.

552

COUNSEL

McQuaid Bedford & Van Zandt, Lyman D. Bedford and Naz Roudiani for Plaintiff, Cross-defendant and Appellant.

Lynch and Lynch and Craig M. Lynch for Defendant, Cross-complainant and Respondent.

OPINION

KANE, J.—In the 1860's, J.W. Nicoll constructed a three-mile-long ditch (the Nicoll Ditch) to convey water from the south fork of the Kern River to his 300.5-acre property. A 1902 judgment confirmed his right to appropriate a defined quantity of water from the Kern River through the Nicoll Ditch for use on the property. The subject property consisted of two contiguous parcels of land—an upslope parcel of 142.79 acres referred to as Nicoll Ranch, and a downslope parcel of 157.70 acres referred to as Nicoll Field.[1] In 1933, the parcel known as Nicoll Field was foreclosed on by the bank, was later sold to the predecessor in interest of respondent Oscar Rudnick (hereafter Rudnick), and is now owned by Rudnick. Appellant John W. Nicoll (hereafter Nicoll), the grandson of J.W. Nicoll,[2] is owner of the parcel known as Nicoll Ranch. A dispute arose between Nicoll and Rudnick concerning the Nicoll Ditch water, and an action to quiet title to the parties' respective water rights was filed in 2006. At the trial thereof, Nicoll argued the water rights should be apportioned based on the amount of water actually used on each parcel in the years immediately preceding the bank's foreclosure of the Nicoll Field parcel.[3] Rudnick's position was that the 1902 judgment established the water rights as appurtenant to the *entire* 300.5 acres, and when he acquired Nicoll Field, which constituted 52 percent of the original acreage, he thereby acquired 52 percent of the water rights. The trial court adopted Rudnick's position. Nicoll appealed, contending the trial court erred when it failed to apportion the water rights based on preforeclosure water usage on each parcel. We will affirm the judgment.

---

[1] The entire 300.5 acres was formerly known as Nicoll Ranch. After the downslope parcel was lost to foreclosure, the upslope parcel continued to be known by that name. For purposes of this appeal, we will use the name Nicoll Ranch to refer only to the upslope parcel, as a means of distinguishing it from the downslope parcel called Nicoll Field. When occasional mention is made herein of the name formerly given the entire 300.5 acres, we will use the name the J.W. Nicoll Ranch for that purpose.

[2] Appellant and his grandfather apparently have the same name. We have referred to the grandfather as J.W. Nicoll in order to distinguish them.

[3] Nicoll estimated that Nicoll Ditch water was used in the 1920's and early 1930's to irrigate approximately 135 acres of Nicoll Ranch, but only 45 acres of Nicoll Field. Based on these figures, Nicoll claimed that Nicoll Ranch should be allocated approximately 75 percent of the water rights and Nicoll Field 25 percent.

## FACTS AND PROCEDURAL HISTORY

Prior to the bench trial, the parties submitted to the trial court a stipulation of undisputed facts together with certain records agreed to be genuine and authentic, including copies of the relevant deed of trust on the Nicoll Field parcel, the 1933 trustee's deed, a 1935 indenture, and the 1902 judgment and report of arbitrators relating to the water rights deemed to be appurtenant to the original parcel of real property. The following is a brief synopsis of the undisputed facts and records.

Nicoll owns the real property situated in Kern County, California, designated as assessor's parcel No. 321-061-16, comprising 142.79 acres. Rudnick owns the real property situated in Kern County, California, designated as assessor's parcel No. 426-032-15, comprising 157.70 acres. As noted, for purposes of this appeal we refer to Nicoll's property as Nicoll Ranch and Rudnick's property as Nicoll Field. Nicoll Ranch and Nicoll Field are contiguous parcels that were originally owned by J.W. Nicoll as a part of the land known as the J.W. Nicoll Ranch. In 1864, J.W. Nicoll constructed a ditch to convey water from the Kern River to his ranchland (i.e., the Nicoll Ditch).

In 1902, while J.W. Nicoll still owned all 300.5 acres of the J.W. Nicoll Ranch, including the parcels referred to herein as Nicoll Ranch and Nicoll Field, a judgment was entered confirming his right to appropriate water from the Kern River through the Nicoll Ditch. The 1902 judgment of the Kern County Superior Court, entered on the report of arbitrators, established as follows: ". . . [J.W.] Nicoll has the third right or claim to take water from said South Fork of Kern River, which said claim dates from the year 1864, said claim being to the extent of 300 inches of water measured under a four inch pressure, and measured at the head gate of the ditch known as the [Nicoll] Ditch."[4] The basis of this third right to take water from the south fork of the Kern River was a ditch right-of-way attained by the diversion and conveyance of water from the south fork of the Kern River through the Nicoll Ditch by J.W. Nicoll, beginning in 1864 and continuing to the present day, which created a valid pre-1914 appropriative right.

The 1902 judgment indicated that the individual water rights adjudicated therein were appurtenant to each party's real estate on which the appropriated water was used for beneficial purposes. Specifically, the judgment declared that the rights of the parties "in and to the waters of the South Fork of Kern River, and the right to take and appropriate said water, for the purpose of

---

[4] The water and ditch rights were "recognized in a water rights adjudication in Kern County Superior Court as memorialized in the Report of Arbitrators filed therein and dated July 15, 1902 and entered on the judgment roll on July 21, 1902."

irrigation, and other beneficial purposes," were being determined "as to the land owned by said parties, which [land] has acquired a water right from or in connection with said South Fork of Kern River . . . ."

Along with the 1902 judgment and report of arbitrators, the documents presented in the trial court below included the 1901 written agreement to submit the original controversy to arbitration. In that submittal, the parties to the 1902 dispute basically agreed that approximately 150 inches of water, measured under a four-inch pressure, should be allowed as to each 160-acre tract that had acquired a water right, or as to fractional increments of 160 acres.

In 1928, Nicoll's predecessor in interest executed a deed of trust on the Nicoll Field parcel as security for a $10,000 loan from United Security Bank and Trust Company. In 1933, the Nicoll Field parcel was foreclosed on and a trustee's deed was issued to Bank of America. In 1935, an indenture transferred said parcel to Rudnick's predecessors, and Rudnick is the present owner of Nicoll Field.

In addition to the stipulated facts summarized above, the trial court heard the testimony of Nicoll. Nicoll, who was 96 years old at time of trial and has lived at Nicoll Ranch his entire life, testified that in the 1920's and early 1930's Nicoll Ditch water was used to irrigate approximately 135 acres of the Nicoll Ranch parcel, but only 45 acres of the Nicoll Field parcel. Based on these estimates of preforeclosure water usage, Nicoll claimed that his property, Nicoll Ranch, should be allocated approximately 75 percent of the water rights, and that Rudnick's property, Nicoll Field, should receive 25 percent thereof. In contrast, Rudnick argued that the 1902 judgment established that the water rights were appurtenant to the entirety of the land, and when he acquired 52 percent of the original acreage, a proportionate share of the water rights passed to him (i.e., 52 percent).

On March 10, 2007, the trial court issued its proposed statement of decision in which it adopted the analysis of Rudnick. On March 19, 2007, judgment was entered in favor of Rudnick, declaring Rudnick to be "the owner of 52% of the water rights appurtenant to the [J.W.] Nicoll Ranch" that were recognized in the 1902 judgment and report of arbitrators.

Nicoll appeals from the judgment.

## DISCUSSION

### I. *Standard of Review*

When, as here, the question on appeal relates to the legal consequences which arise under undisputed facts, the standard of review is de novo.

(*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278]; *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 437–438 [129 Cal.Rptr.2d 436].)

## II. *Overview of Water Rights Law*

The parties' dispute centers on an appropriative water right acquired by the original landowner of their two parcels. As background, we briefly consider the nature of such a water right under California law.

■ "California operates under the so-called dual system of water rights which recognizes both the appropriation and the riparian doctrines. [Citation.] The riparian doctrine confers upon the owner of land contiguous to a watercourse the right to the reasonable and beneficial use of water on his land. The appropriation doctrine contemplates the diversion of water and applies to 'any taking of water for other than riparian or overlying uses.' [Citation.] Both riparian and appropriative rights are usufructuary only and confer no right of private ownership in the watercourse. [Citation.]" (*People v. Shirokow* (1980) 26 Cal.3d 301, 307 [162 Cal.Rptr. 30, 605 P.2d 859], fn. omitted.) Appropriative rights are subordinate to the rights of riparian owners and prior appropriators, and may be lost by nonuse. (*Pleasant Valley Canal Co. v. Borror* (1998) 61 Cal.App.4th 742, 753 [72 Cal.Rptr.2d 1].)

Historically, appropriative water rights developed during the Gold Rush days and were acquired by diverting water for beneficial use, but beginning in 1914 (under a 1913 statutory scheme) were only acquired through a statutory process:

■ "Upon discovery of gold and the development of the California mining industry, water was often diverted from streams passing through government lands to be used on nonriparian lands. To accommodate this usage, the doctrine of *appropriation* originated and was incorporated in California water law. [Citation.] The appropriation doctrine confers upon one who actually diverts and uses water the right to do so provided that the water is used for reasonable and beneficial uses and is surplus to that used by riparians or earlier appropriators. Appropriators need not own land contiguous to the watercourse, but appropriation rights are subordinate to riparian rights so that in times of shortage riparians are entitled to fulfill their needs before appropriators are entitled to any use of the water. [Citation.] And, as between appropriators, the rule of priority is 'first in time, first in right.' [Citation.] The senior appropriator is entitled to fulfill his needs before a junior appropriator is entitled to use any water. [Citations.]

"Initially, rights to appropriate water were acquired by actual diversion and use of the water. Beginning in 1914, however, a statutory scheme has

provided the exclusive method of acquiring appropriation rights. (*People v. Shirokow, supra*, 26 Cal.3d [at p.] 308.) Thus, an application for appropriative rights must now be made to the Board for a permit authorizing construction of necessary water works and the taking and use of a specified quantity of water. [Citations.] Riparian rights, however, continue to be acquired through ownership of land contiguous to the watercourse." (*United States v. State Water Resources Control Bd.* (1986) 182 Cal.App.3d 82, 101–102 [227 Cal.Rptr. 161]; see also *Pleasant Valley Canal Co. v. Borror, supra*, 61 Cal.App.4th at pp. 750–753 [summary of history of water rights law in California].)

■ In the present case, the diversion of water from the Kern River through the Nicoll Ditch, as was adjudicated in the 1902 judgment, created a *pre-1914* appropriative right. A pre-1914 appropriative right is not subject to the 1913 statutory scheme for purposes of acquisition and supervision of use. (*People v. Murrison* (2002) 101 Cal.App.4th 349, 359, fn. 6 [124 Cal.Rptr.2d 68].)

III.   *The Trial Court's Judgment Was Correct*

After consideration of the stipulated facts and the submitted documents, the trial court concluded: (1) the 1902 judgment recognized the existence of an appropriative water right in favor of J.W. Nicoll that was appurtenant to the entire 300.5 acres, and (2) when Rudnick acquired 52 percent of the total acreage by conveyance deed that did not refer to or limit any water right appurtenant to the land, he thereby obtained a proportionate share thereof (i.e., 52 percent). As more fully explained below, we hold the trial court applied the correct legal principles to the undisputed facts in reaching its judgment and no legal error is indicated therein.

A.   *The 1902 Judgment Recognized a Water Right for the Entire 300.5-acre Property*

As noted earlier, the 1902 judgment confirmed that J.W. Nicoll had "the third right or claim to take water from said South Fork of Kern River, which said claim dates from the year 1864, said claim being to the extent of 300 inches of water measured under a four inch pressure, and measured at the head gate of the ditch known as the [Nicoll] Ditch." Moreover, the 1902 judgment clearly acknowledged that the water rights were appurtenant to the land by affirming that the rights "to take and appropriate said water" were being adjudicated "as to the land owned by said parties, which [land] has acquired a water right from or in connection with said South Fork of Kern River . . . ."

■ This language of the 1902 judgment comports with established law in California that once such water rights are acquired, they become appurtenant

to the land. "The concept of an appropriative water right is a real property interest incidental and appurtenant to land." (*Fullerton v. State Water Resources Control Bd.* (1979) 90 Cal.App.3d 590, 598 [153 Cal.Rptr. 518]; see also *Inyo Cons. Water Co. v. Jess* (1911) 161 Cal. 516, 520 [119 P. 934].) The following quotation from *Stanislaus Water Co. v. Bachman* (1908) 152 Cal. 716, 726–727 [93 P. 858], leaves no room for doubt that such rights are appurtenant to and run with the land: "The right in water which has been diverted into ditches or other artificial conduits, for the purpose of conducting it to land for irrigation, has been uniformly classed as real property in this state. 'The right to water must be treated in this state as it has always been treated, as a right running with the land and as a corporeal privilege bestowed upon the occupier or appropriator of the soil; and as such, has none of the characteristics of mere personalty.' [Citation.] The right to have water flow from a river into a ditch is real property; and so also is the water while flowing in the ditch. [Citation.] A wrongful diversion of water flowing in a ditch is an injury to real property. [Citation.] The right to take water from a river and conduct it to a tract of land is realty. [Citation.] The right to have water flow through a pipe from a reservoir to and upon a tract of land is an appurtenance to the land. [Citation.] An undivided interest in a ditch and in the water flowing therein is real property. [Citation.] A ditch for carrying water is real estate. [Citations.] And where one person has water flowing in a ditch and another has the right to have a part of such water flow from the ditch to his land for its irrigation, the right of the latter is a servitude upon the ditch and is real property. [Citation.] So, in the case at bar, the right of Threlfall and his successor, Bachman, under the agreement, to have the water flow from the plaintiff's canal through the lateral ditch, to the land, for its irrigation, is a servitude upon the ditch and upon the canal, is an appurtenance to the land, and is real property." We conclude the trial court correctly decided that the appropriative water right was appurtenant to the land.

It is also clear that the land to which the water right attached was the *entire* 300.5 acres. Again, the 1902 judgment expressly declared the water rights were acquired as to the "land owned by said parties." As applicable here, the land owned by J.W. Nicoll was the *entire* 300.5-acre property, which was owned by him as a single ranch estate. Thus, until the parcel known as Nicoll Field was foreclosed on in 1933 and thereby came under separate ownership, the water flowing through the Nicoll Ditch was appurtenant to and could be beneficially used on the *entire* 300.5 acres.

This conclusion is further confirmed by the agreement to submit the controversy to arbitration, which was recorded with the 1902 judgment. Said arbitration submittal stated that the parties agreed the arbitrator should do the following: "[A]llow to each one hundred and sixty acre tract of land, which has acquired a water right owned or claimed by the parties . . . or any fractional part of such 160 acres so owned or claimed, the equivalent of one hundred

and fifty (150) inches of water to each 160 acres so owned or claimed, measured under a four (4) inch pressure."[5] This same language is repeated in the 1902 judgment as comprised in the report of arbitrators. Such wording indicates that the water quantities allotted in the 1902 judgment were based, at least in part, on acreage increments of 160 acres, or fractional portions thereof. Thus, when J.W. Nicoll was awarded a water right for the benefit of the land owned by him, the particular quantity of water awarded, i.e., 300 miner's inches, was apparently based (in part) on his ownership of more than 300 acres of land. This reflects that the 1902 judgment that a water right was acquired by J.W. Nicoll was determined with reference to the entire 300.5 acres.[6]

For all of the reasons discussed above, the trial court correctly concluded the water right recognized in the 1902 judgment was appurtenant to the *entire* 300.5 acres.

### B. *Effect of 1933 Foreclosure and Subsequent Conveyance to Rudnick*

In 1928, Nicoll's predecessor in interest executed a deed of trust to secure a bank loan. The property used for security was the parcel known as Nicoll Field, which consisted of 157.70 acres or approximately 52 percent of the 300.5 acres. The deed of trust did not expressly mention water rights. In 1933, the loan was in default and the bank foreclosed on the Nicoll Field parcel. A trustee's deed was executed in favor of the bank, which then sold the parcel to the individuals through whom Rudnick acquired title to the property. None of these conveyances expressly referred to water rights.

■ "Under the general rule that rights and appurtenances that ordinarily pass with a conveyance of land pass to a purchaser on foreclosure, an appropriative water right is included in a sale under foreclosure . . . [even though] not mentioned in the foreclosure proceedings." (62 Cal.Jur.3d, *supra*, Water, § 551, p. 685, fn. omitted.) Moreover, because water rights are

---

[5] The rationale for the agreed volume of water per acre is not in the record before us. We presume the 1902 court and arbitrators were fully cognizant of the basic law that appropriative rights are acquired by actual, beneficial use, which use is an essential element to establish the existence of an appropriative right as well as its measure. (62 Cal.Jur.3d (2005) Water, § 323, pp. 408–409.) That being said, we see no reason that several appropriators of a particular stream or water source may not agree, in submitting a dispute among themselves to a court or arbitrator, that once the existence and priority of their respective appropriative rights are legally determined, the quantity of water to be awarded to each party found to have an appropriative right shall be limited to or defined by an agreed *per acre* amount, as long as the quantity of water that is actually awarded to each such party does not exceed the amount shown to be reasonably and beneficially used on his or her property. Of course, the 1902 judgment is final, and its validity and factual basis are not in question here.

[6] See footnote 5, *ante.*

considered appurtenant to the land, they are presumed transferred with the land absent an express reservation. (*Stanislaus Water Co. v. Bachman, supra,* 152 Cal. at p. 724 [water right "an incident of the land and would pass as such by a conveyance of the land, without express mention and without any reference thereto"]; *Trask v. Moore* (1944) 24 Cal.2d 365, 371 [149 P.2d 854] [a conveyance of land upon a foreclosure must carry with it a water right appurtenant to the land]; *Harper v. Buckles* (1937) 19 Cal.App.2d 481, 485–486 [65 P.2d 947].)

■ Since the 1928 deed of trust and the 1933 trustee's deed failed to expressly reserve water rights, it is clear that some portion of the water right passed to Rudnick when he acquired Nicoll Field. The only question is the extent thereof, or how much of the overall water right was appurtenant to the Nicoll Field parcel. The 1902 judgment recognized an appropriative water right that was appurtenant to the *entire* 300.5 acres, which right therefore could have been beneficially used on any portion of the 300.5 acres. For this reason, we believe the trial court correctly and reasonably resolved the issue. Inasmuch as Nicoll Field constituted approximately 52 percent of the original 300.5-acre land, a corresponding share of the water right, or 52 percent, was conveyed to Rudnick. (See, e.g., *Senior v. Anderson* (1903) 138 Cal. 716, 723 [72 P. 349] [water right appropriated for use on certain land "became appurtenant thereto, and when the right was divided, the several interests continued to be appurtenant, respectively, to the tracts conveyed"].)

### C. *Location on Land of Pre-1933 Usage Not Relevant*

■ Nicoll argues that because, in the years prior to the 1933 foreclosure, a higher percentage of irrigation water was used on one part of the 300.5-acre property (i.e., Nicoll Ranch) as compared to another (i.e., Nicoll Field), it somehow caused an apportionment of the water right between these two parts of the land, even though the entire acreage was still under one ownership. The law is otherwise. The owner of an appropriative water right may, at his discretion, use the water at any place on the land, without in any way impairing or limiting the nature of his right. "[A] party acquires a right to a given quantity of water by appropriation and use, and he loses that right by nonuse or abandonment. *Appropriation, use and nonuse are the tests of his right; and place of use and character of use are not. When he has made his appropriation he becomes entitled to the use of the quantity which he has appropriated at any place where he may choose to convey it, and for any useful and beneficial purpose to which he may choose to apply it.* Any other rule would lead to endless complications and most materially impair the value of water rights and privileges." (*Davis v. Gale* (1867) 32 Cal. 26, 34, italics added; see *Orange County Water Dist. v. Riverside* (1959) 173 Cal.App.2d 137, 195 [343 P.2d 450] [owner of water right may change place

of use, so long as it does not cause injury to those having superior rights]; *Barnes v. Hussa* (2006) 136 Cal.App.4th 1358, 1368 [39 Cal.Rptr.3d 659] [same].)

The principal case relied upon by Nicoll in connection with this point, namely *Trimble v. Hellar* (1913) 23 Cal.App. 436 [138 P. 376] (*Trimble*), is clearly distinguishable. *Trimble* was an action to determine the conflicting claims of two distinct appropriators of water from Sam's Creek, each of whom owned separate ranch properties that were never previously conjoined as a single parcel. Both claimants asserted a right to convey water to their respective ranches through separate ditches. In resolving the controversy, the Court of Appeal looked to the actual and beneficial use of the creek water as between the two claimants. (*Id.* at pp. 443–444.) Rudnick aptly summarizes why *Trimble* is distinguishable from the case at hand: "None of the issues the Trial Court based its judgment and Statement of Decision on were raised in the *Trimble* case. There was no prior judgment awarding appropriative water rights to a single parcel of land. There was no deed of trust encumbering the appurtenant water rights of a portion of the original parcel. There was no foreclosure of the deed of trust which conveyed the transfer of the appurtenant water rights. There was no purchase of the foreclosed parcel with its appurtenant water rights by any of the parties in *Trimble*." For these reasons, *Trimble* does not support Nicoll's position in this case.

Finally, Nicoll cites a number of cases in support of the well-established proposition that an appropriative water right is founded on and measured by the amount of water that is reasonably and beneficially used on the land. (*Akin v. Spencer* (1937) 21 Cal.App.2d 325, 328 [69 P.2d 430]; *Haight v. Costanich* (1920) 184 Cal. 426, 431 [194 P. 26]; *Utt v. Frey* (1895) 106 Cal. 392, 395 [39 P. 807].) A typical expression of this rule is the following: "[T]he extent of the right gained by the diversion is limited to the amount of water applied to a beneficial use, which has been interpreted to mean the amount actually used and reasonably necessary for a useful purpose to which the water has been applied." (*Haight v. Costanich, supra*, at p. 431.) We agree this is an accurate statement of the law. However, Nicoll's reliance thereon is misplaced. The present case was not about whether an appropriative water right was established by one or both parties to a particular quantity of water. The 1902 judgment *already* established the appropriative right to which the 300.5-acre parcel originally owned by J.W. Nicoll was entitled. The dispositive issue here was whether said established water right was appurtenant to the entirety of the land, or to only a portion thereof, at the time of the 1933 foreclosure. We have concluded the appropriative right recognized in the 1902 judgment was appurtenant to the entire 300.5 acres at the time of the foreclosure. That being the case, and in view of the legal concepts that (a) the place of use on the property does not affect or limit the right, and (b) all appurtenant water rights are presumed to run with the land unless

reserved in the deed, we are of the opinion that the trial court correctly determined the parties' respective water rights.

## DISPOSITION

The judgment is affirmed. Rudnick is entitled to costs on appeal.

Harris, Acting P. J., and Wiseman, J., concurred.